UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SHEILA CLEEK,                              )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )          No. 4:17CV2444 HEA
                                           )
                                           )
NANCY A. BERRYHILL,                        )
Acting Commissioner of                     )
Social Security Administration,            )
                                           )
            Defendant.                     )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court, pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq.,* authorizing judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's Title II application for Disability Insurance Benefits ("DIB") and Title XVI application for Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is affirmed.

On May 2, 2016 a hearing was conducted by ALJ Lori Imslad in Creve Coeur, Missouri. Plaintiff appeared in person and with counsel. Heather Hampshire appeared as a witness on behalf of Plaintiff. Also in appearance was Delores Gonzalez, a Vocational Expert.

Plaintiff was born on March 25, 1968. She was 46 years old at the time of the stated onset date and was 48 years old at the time of the hearing. Plaintiff testified about having racing thoughts that prevented her from sleeping. She noted that after being treated by Dr. Byrd that got better and she was more "level" as a result of finding medication that helped her. Her medication sometimes makes her feel drowsy or tired. Plaintiff also testified that she was working at the time of the hearing and is tired all the time at work.

Plaintiff testified she has problems with reading comprehension and matters related to paperwork. During the course of her testimony she referenced having issues with depression which may have been exacerbated by the death of her mother and subsequently, her husband. She also stated she can only work 20 hours per week because she has back problems, arthritis and carpal tunnel in her right hand. She was required to wear a brace on her hand for the carpal tunnel but has never really worn it. Plaintiff testified that she suffers from Type 2 diabetes, high blood pressure, high cholesterol. She doesn't feel the diabetes is under control but she doesn't test her blood sugar level.

There was also testimony by Plaintiff that she gets really stressed and if she worked a full eight hour shift she probably would have headaches, and not be able to remember things. She goes grocery shopping but her daughter takes her to the store.

Heather Hampshire testified on behalf of the Plaintiff and stated she was a case worker for the Plaintiff and helps her with management, guiding resources and budgeting. She also testified that since Plaintiff started working there has been an observable increase in stress and decrease in energy, increase in anxiety, increase in pain from the arthritis, and increased social anxiety.

Next, the Vocational Expert, Delores Gonzales, testified without any objection to her qualifications. Ms. Gonzales testified as to the past work of Plaintiff as a polisher which is light unskilled with an SVP of 2; a pressing machine operator, which is medium, unskilled with an SVP of 2, but noted as light in its performance; and conveyor feeder off-bearer, which is medium, unskilled with an SVP of 2. Further, based upon a proper hypothetical, the Vocational Expert testified that Plaintiff could not perform any of her past work

Ms. Gonzales testified there was other work that Plaintiff could perform and that the work was consistent the DOT and Selected Characteristics of Occupation. Plaintiff could work as a mail sorter which is light, unskilled with an SVP of 2, a marker II which is light unskilled with an SVP of 2, and a router, which is light, unskilled with an SVP of 2. Considering the additional limitation of a 20 hour work week, the Vocational Expert testified there were no jobs in the national economy.

The ALJ held that Plaintiff was not under any disability during her alleged onset date, June 9, 2014. The ALJ found that Plaintiff had severe impairments that included obesity, diabetes, osteoarthritis, psychotic disorder/schizophrenia, major depressive disorder, learning disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and attention deficit disorder. The ALJ found that she did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. The ALJ determined that Plaintiff retained the RFC to perform light work with certain limitations. The ALJ found that Plaintiff's impairments would not preclude her from performing work that exists in significant numbers in the national economy, including work as a mail sorter, marker II, and router. Consequently, the ALJ found that Plaintiff was not disabled.

On July 21, 2017, the Social Security Appeals Council denied Plaintiff's request for review. Plaintiff has exhausted her administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner subject to judicial review.

### Statement of the Issues

The general issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial

evidence on the record as a whole. The specific issues in this case are whether the ALJ properly weighed the opinion evidence and considered the consistency of Plaintiff's statements.

As explained below, the Court has considered the entire record in this matter. Because the decision of the Commissioner is supported by substantial evidence, it will be affirmed.

## Standard for Determining Disability

The standard of review here is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See id.*

The Court must consider evidence that both supports and detracts from the Commissioner's decision but cannot reverse the decision because substantial evidence also exists in the record that would have supported a contrary outcome, or because it would have decided the case differently. *See Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). If the Court finds that the evidence supports two inconsistent positions and one of those positions represents the Commissioner's findings, the Court must affirm the Commissioner's decision. *Wright v. Colvin*,

789 F.3d 847, 852 (8th Cir. 2015). The Eighth Circuit has stated that "[w]e defer heavily to the findings and conclusions of the Social Security Administration." *Id.*(quoting *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the

ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611.  At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e).  At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a) (4) (iv), 404.1520(f), 416.920(a) (4) (iv), 416.920(f); *McCoy*, 648 F.3d at 611.  If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next

step. *Id*... At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

**RFC**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record and observations by third parties and treating and examining physicians relating to such matters as:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions.

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See *Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F .3d 687, 697 (the RFC is ultimately a medical question that

must find at least some support in the medical evidence in the record).  An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir.2006).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005). "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." *Id*.  The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004).  The ALJ need only acknowledge and consider those factors. *Id*. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988).  The burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple

instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

If the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

If the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his physical or mental limitations."

*Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

If the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the

Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If

the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). The Commissioner makes this determination by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. § 416.920a(c)(3).

## Decision of the ALJ

In a decision dated May 27, 2016, the ALJ determined that Plaintiff was not disabled under the Social Security Act. The ALJ acknowledged that the administrative framework required her to follow a five-step, sequential process in evaluating Plaintiff's claim. At step one, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity from since June 6, 2014, the amended alleged onset date. At step two, the ALJ found Plaintiff had the following severe impairments during the relevant period: obesity, diabetes, osteoarthritis. Psychotic disorder/schizophrenia; major depressive disorder; learning disorder; anxiety disorder/post-traumatic stress disorder; and attention deficit disorder. At step three the ALJ further concluded, however, that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. 20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d),

416.925 and 416.926. Before step four the ALJ went on to find that Plaintiff had the residual functional capacity to perform a range of light work in that she can lift, carry, push, or pull 20 pounds occasionally, and 10 pounds frequently; sit for 6 hours in an 8-hour workday; stand or walk for 6 hours in an 8-hour workday; never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs;, balance, stoop, kneel, crouch, and crawl; only occasional exposure to unprotected heights and hazardous machinery; understand, remember, carry, and carry out simple instructions and non-detailed tasks; is able to respond appropriately to supervisors and coworkers in a taskoriented setting where contact with others is casual and occasional; and no contact with the general public or handling customer complaints. At step four the ALJ found there were jobs available for Plaintiff in the national economy considering her age, education, work experience, and residual functional capacity. At step five the ALJ found that Plaintiff has not been under a disability as defined in the Social Security Act from June 6, 2014.

## A. Was There Substantial Evidence in Support of the RFC Finding by the ALJ?

Plaintiff asserts that the RFC finding by the ALJ is fatally flawed. The record fully and substantially supports the finding of the ALJ. The ALJ considered Plaintiff's improvement through medical treatment relating to those things of complaint as noted by the Plaintiff. She even testified that she was better since she began seeing Dr. James Byrd, her psychiatrist. Her thoughts were no longer racing

and she felt more level. The Plaintiff also noted at the hearing that her panic and anxiety attacks were under control.

After the alleged onset date and while residing at a Pathways group home she socialized by playing games and participating in outings and other activities. Plaintiff even took the minutes from meetings. Plaintiff subsequently moved out and became independent. Since being on her own she maintains her residence, does grocery shopping, laundry, and personal care. In addition she maintains a part time job as a file clerk.

The defendant is correct in its argument that the ALJ considered the opinion evidence in the record as required and "[t]he ALJ does not need to base her RFC decision on the opinion of any one particular physician. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("'[T]he ALJ [was] not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.'" (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007))). An ALJ considers the medical opinions together with the rest of the relevant evidence in determining disability. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ has the task of determining the weight to be afforded each opinion. *See Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008) ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions.").

The record clearly supports the little weight the ALJ gave to the opinion of Dr. Byrd.  The opinion of Dr. Byrd was in conflict with the record in regard to Plaintiff's ability to meet competitive standards in mental abilities and aptitudes to do unskilled work.  Byrd's opinion conflicted with treatment notes in the record. The record relating to treatment notes stated that Plaintiff was diagnosed with mild depression, ADHD, and psychotic disorder, and moderate PTSD. But the notes also demonstrated that Plaintiff had normal attention and concentration, okay recent memory, intact abstract reasoning and computations, and normal speech. The notes also reflected Plaintiff was cooperative, oriented, with an often adequate fund of knowledge and fair mood.

Other opinion evidence was considered as well.  Dr. M. Sameer Arain, M.D., a staff psychiatrist at Crider Health Center opined, in October 2013, that Plaintiff  would have difficulty working a full-time job on a sustained basis, dealing with work-related stress, behaving in an emotionally stable manner, and demonstrating reliability.  The review of the record supports the finding by the ALJ that this opinion was likewise inconsistent with Plaintiff's conduct and improvement.

There was even the opinion of the consultative psychologist Dr. Karen Hampton.  Dr. Hampton opined, after an examination on December 13, 2013, that

Plaintiff had mild limitations in the ability to understand and recall simple instruction, but moderate limitations in carrying out simple directions and marked limitations in the ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions . The ALJ properly assigned some weight to the opinion but the record through Dr. Byrd showed Plaintiff had more that moderate limitations in mental functioning.

On September 3, 2014 state agency psychologist Dr. Steven Akeson opined that Plaintiff could understand, remember, and carry out short and simple instructions; could adapt to most changes in the work place and make simple work-related decisions; and would not have any significant difficulties relating to authority figures and co-workers. The ALJ correctly credited these opinions with great weight as the record demonstrates consistency with circumstances of Plaintiffs daily activities of living independently, maintaining a part-time job, caring for a dog, as well as her statement that she had no difficulty dealing with authority figures.

The ALJ considered the opinions from "other" sources, including Gina Dupuis, Plaintiff's Community Support Counselor, and Heather Hampshire, her caseworker. The opinions of "other" sources, such as therapists and physicians'

assistants cannot establish impairments, but can be used to determine "the severity of the claimant's impairment and the effect of the impairment on the claimant's ability to work." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (evaluating evidence from other sources). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

It was the testimony of Ms. Hampshire, caseworker for Plaintiff, that as a consequence of the Plaintiff working, Plaintiff had increased stress, decreased energy, increased anxiety, due to arthritis pain and social anxiety. These were not her observations but were rather self-reported statements to Ms. Hampshire by Plaintiff. These observations are indeed discredited by the record and the ALJ acted properly in affording little credit to this opinion.

The ALJ's decision was supported by substantial evidence, including the objective medical evidence, Plaintiff's improvement with treatment, and her daily activities. The ALJ closely and affirmatively linked her findings to substantial evidence in the record. As a consequence the ALJ's decision must be affirmed. *See Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001).

**B. Did The ALJ Properly Find That Plaintiff Could Perform Other Work?**

Once the ALJ found that Plaintiff could not perform her past relevant work at step four the burden shifting mechanism 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) came into play. The Commissioner then had the duty at step five to affirmatively demonstrate that Plaintiff could perform other work existing in significant numbers in the national economy.  Here the record is clear that the ALJ appropriately and correctly made inquiry of the vocational expert in relation to a hypothetical of  someone with Plaintiff's age, education, experience, and RFC. A vocational expert's response to a complete and correctly phrased hypothetical provides substantial evidence for the ALJ's step five conclusion. *See Cox v. Astrue*, 495 F.3d 614, 620  (8th Cir. 2007). The vocational expert testified that with stated limitations Plaintiff could work as a mail sorter, marker II, or router. The record supports that the ALJ's conclusion is supported by substantial evidence in the record.

### Conclusion

The ALJ decision is supported by substantial evidence on the record as a whole.  The ALJ's decision will not be reversed for the reasons set forth in this Opinion, Memorandum and Order. The decision of the ALJ denying Plaintiff's claims for benefits is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment in accordance with this Memorandum and Order is entered this same date

Dated this 18th day of January, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE